**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>ARSENY ILARIONAVISH POLUSHKIN and ANFISA ASTEMON POLUSHKIN,<br><br>Debtors. | Case No. 25-00170-GS<br>Chapter 13<br><br>Hearing Date<br>DATE: February 6, 2026<br>TIME: 9:30 a.m. |

**MEMORANDUM DECISION ON OBJECTION TO PROOF OF CLAIM NO. 16**
**(Citibank N.A.)**

Debtors Arseny and Anfisa Polushkin have objected to proof of claim no. 16 (Claim No. 16) filed by Citibank N.A. (Citibank). The debtors, proceeding in pro per, raise a number of arguments. The court heard oral arguments on January 14, 2026, and again on February 6, 2026. Having considered the objection and arguments presented at the hearings, the court will enter an order overruling the objection and allowing the claim as an unsecured claim in the amount of $9,553.55.

**Background**

On September 25, 2025, Arseny and Anfisa Polushkin filed their voluntary petition under chapter 13 of the Bankruptcy Code. The Polushkins filed their Schedule E/F to list their unsecured creditors. The schedule did not list Citibank as a creditor.[1]

[1] The debtors did list an undisputed unsecured debt owed to Home Depot in the amount of $10,094. ECF No. 15-1 at 31. Citibank's proof of claim discloses that its debt was also under the name "The Home Depot Consumer Credit Card." Proof of Claim No. 16-1 at 1. The attachment to Claim No. 16 also states that the credit card was under the merchant name "The Home Depot Consumer Credit Card." Proof of Claim No. 16-1 at 4. However, the debtors' Schedule E/F fails to list the account number for the undisputed Home Depot debt. ECF No. 15-1 at 31. Additionally, LVNV Funding, LLC has filed Proof of Claim No. 14-1 in the amount of $11,644.08, also disclosing that the debt was originally owed to Citibank, N.A. under the name "The Home Depot Consumer Credit Card." Proof of Claim No. 14-1 at 4. That debt is under a different account number than the one listed in Citibank's proof of claim.

The last day to file proofs of claim for non-governmental creditors was set for December 4, 2025.

Citibank timely filed Claim No. 16 as an unsecured claim in the amount of $9,553.55 for credit card charges on an account ending 7334. Claim No. 16 includes a Statement of Account Information (Statement). The Statement listed the balance owed as $9,553.55. This amount was broken down into $8,514.92 in principal, $678.63 in interest, and $360.00 in fees. The Statement also listed dates for the last transaction, the last payment, and the date the account was charged off. Finally, the Statement makes clear that Citibank is the originating creditor and continues to own the debt.

Citibank amended its claim on June 1, 2026. The only difference in the amended claim was the addition of a new page to note a change of address for payments. Amended Proof of Claim No. 16 at 4.

The Polushkins filed their objection to Claim No. 16 on December 8, 2025 (Objection). ECF No. 108. They argue that Citibank has failed to provide: (1) the written agreement on which the claim is based; (2) an itemization of interest or fees; (3) any transaction level account history; (4) charge off documentation; (5) accounting evidence required by federal regulatory standards; and (6) proof that it continues to own the receivable after charge off. The Polushkins also filed a separate memorandum of law in support of their Objection. ECF No. 110. Both the Objection and memorandum generally list bullet points as well as statutes and cases without discussion. The Polushkins relied on their filings at the hearing on the Objection.

**<u>Analysis</u>**

Under Fed. R. Bankr. P. 3001(f), Citibank's claim constitutes prima facie evidence of the validity and amount of the claim so long as it was "executed and filed in accordance with these

rules." *See also Boruff v. Cook Inlet Energy LLC (In re Cook Inlet Energy LLC)*, 583 B.R. 494, 501 (B.A.P. 9th Cir. 2018).

Rule 3001(c) sets forth what documents a creditor must provide to be "filed in accordance with these rules" so as to be entitled to prima facie validity. Generally, where the claim is based on a writing, the creditor must file a copy of that writing with its proof of claim, unless it is a claim based on a consumer-credit agreement. Fed. R. Bankr. P. 3001(c)(1). Additionally, if the debtor is an individual, a creditor must file an itemized statement of the principal amount and any interest, fees, expenses, or other charges incurred before the petition was filed. Fed. R. Bankr. P. 3001(c)(2). But, if the claim is based on an open-end or revolving consumer-credit agreement, the claim must only include a statement providing the following information:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
> (iii) the date of that last transaction;
> (iv) the date of the last payment on the account; and
> (v) the date that the account was charged to profit and loss.

Fed. R. Bankr. P. 3001(c)(4). "If the claimant complies with these requirements, the proof of claim constitutes prima facie evidence of the validity and the amount of the claim pursuant to Rule 3001(f)." *In re Umstead*, 490 B.R. 186, 195 (Bankr. E.D. Pa. 2013) (citing Advisory Committee Note, Rule 3001 (2011)).

This presumption of validity may be rebutted with evidence "tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Margulies L. Firm, APLC v. Placide (In re Placide)*, 459 B.R. 64, 72 (B.A.P. 9th Cir. 2011) (quoting *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000)). But it is the objecting party that must "come forward with sufficient evidence and 'show facts

tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" *Lundell,* 223 F.3d at 1039 (quoting *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991)). Thus, "if the objecting party does not rebut the presumption of prima facie validity, the claims litigation ends there, and the claim should be allowed without any further burden on the claimant to demonstrate its validity." *Sloan v. Sandton Credit Sols. Master Fund IV (In re Sloan)*, 2022 WL 17716448, at **3–4 (B.A.P. 9th Cir. Dec. 15, 2022) (citing *Nations First Cap., LLC v. Decembre (In re Nations First Cap., LLC),* 2020 WL 3071983, at *7 (B.A.P. 9th Cir. June 5, 2020) (citation omitted), *aff'd,* 851 Fed. App'x 32 (9th Cir. 2021)).

On the other hand, if the party objecting to the claim presents sufficient evidence to rebut the presumption of validity under Rule 3001(f) "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'" *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd sub nom.*, *Ashford v. Naimco, Inc. (In re Consol. Pioneer Mortg. Entities)*, 91 F.3d 151 (9th Cir. 1996). Notwithstanding the rebuttable presumption of prima facie validity, the burden of persuasion remains with the claimant. *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 707 (B.A.P. 9th Cir. 2006) (citing *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir. 1999)).

Here, Citibank's claim is for credit card debt - the quintessential open ended, revolving debt subject to Rule 3001(c)(4). Claim No. 16 includes a Statement that meets all the requirements of Rule 3001(c)(4). Specifically, the Statement shows that: (1) Citibank is the creditor and the debt was not acquired from another entity; (2) the debts were owed to Citibank at the time of the last transaction; (3) the date of that last transaction; (4) the date of the last payment on the account; and (5) the date that the account was charged to profit and loss. Even

though Citibank has failed to respond to the Objection or appear at the hearings, its claim is entitled to prima facie validity as to both the validity of the debt as well as the amount of that debt under Rule 3001(f). *See, e.g., Umstead*, 490 B.R. at 198 ("An extended discussion is not necessary with respect to [the proof of claim]. Although no response to the Debtor's objection was filed, [the proof of claim] satisfies all of the requirements of Rule 3001(c)(4). Therefore, it is entitled to prima facie evidentiary status. I will overrule the objection and allow the claim in full because the Debtor offered no evidence disputing the validity or amount of [the proof of claim].").

As such, Citibank's claim complies with the requirements under Rule 3001(c)(4) for a proof of claim for credit card debt. Pursuant to Rule 3001(f), Claim No. 16 is entitled to the presumption of validity as to liability and the amount of the debt.

Significantly, the debtors do not submit any evidence to controvert their liability to Citibank, or the amount of their debt. Rather, they argue that Citibank has failed to submit a proper claim.

**1. The written agreement on which the claim is based.**

The debtors recite the requirements of Rule 3001 and summarily conclude that Citibank has failed to comply with those requirements. They rely on Rule 3001(c)(1), which generally requires that creditors asserting a claim based on a writing attach the writing that forms the basis of the claim to the proof of claim. However, Rule 3001(c)(4) provides a separate subset of requirements for creditors asserting claims for credit card debts. This is why such debts are specifically exempted from the requirement to attach the writing on which the debt is based

under Rule 3001(c)(1): "Except for a claim governed by paragraph (3) of this subdivision …."[2] *In re Crutchfield*, 492 B.R. 60, 67 n.4 (Bankr. M.D. Ga. 2013) (rejecting argument that a credit card creditor was required to attach writings supporting the claim beyond the statement required under Rule 3001(c)(4) "because it directly conflicts with Rule 3001(c)(1)'s express exclusion of credit card type debts from the requirement to file a copy of the writing.").

Accordingly, the debtors' argument that the claim failed to attach the written agreement is precluded by the express language of Rule 3001(c)(4). The documents the debtors identify as missing are not required under Rule 3001(c)(4).

**2. The itemization of interest and fees.**

The debtors also argue that the claim fails to itemize interest and fees. Yet, Citibank's claim expressly states that it includes $678.63 in interest and $360.00 in fees. This sufficiently complies with the requirement found in Rule 3001(c)(2)(A).[3] *In re Simon*, 606 B.R. 695, 700 (Bankr. W.D. La. 2019) (collecting cases).

**3. The transaction level account history.**

The debtors argue that Citibank's claim must be disallowed because it failed to provide a complete account history with the proof of claim. Again, the debtors fail to fully account for the impact of Rule 3001(c)(4), which went into effect in 2012 (albeit as Rule 3001(c)(3)). As discussed above, this subsection purposefully limits what credit card creditors must attach to

---

[2] At the time of the *Crutchfield* decision, the requirements for filing a proof of claim based on open end or revolving consumer credit agreements was found at Rule 3001(c)(3). As of December 1, 2024, those requirements are found at Rule 3001(c)(4).

[3] The debtors cite to *In re Mendenhall,* 572 B.R. 267 and *Dunaway v. LVNV Funding, LLC (In re Dunaway),* 531 B.R. 267 (Bankr. W.D. Mo. 2015) in support of this argument. The court found and reviewed the *Dunaway* case, but it is unclear what relevance that case has to the debtors' argument as it addressed the application of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., to the filed claim. The court was not able to locate the *Mendenhall* decision as cited by the debtors.

their proof of claim in the first instance to obtain prima facie validity. The debtors cite to cases that predate the current obligations imposed on credit card creditors under Rule 3001(c)(4). *See eCast Settlement Corp. v. Tran (In re Tran),* 369 B.R. 312 (Bankr. S.D. Tex. 2007); *In re Cluff*, 313 B.R. 323 (Bankr. D. Utah 2004). As the court in *In re Orozco* noted, "to the extent that the debtor relies on those or other decisions for the precise information that the claimant must provide…those decisions are irrelevant on that issue because they were decided prior to the 2012 amendments to the rule, which now specifies exactly what claimants must provide …." 2017 WL 3126797, at *6 (Bankr. C.D. Cal. July 21, 2017) (citing *Cluff*, 313 B.R. 323) [internal citations omitted].

For these same reasons, Citibank was not required to submit a complete transaction history for the account with Claim No. 16.

**4. The misidentification of the basis of the claim.**

The debtors next argue that the claim should be disallowed because Citibank stated that basis of the claim was "money loaned" rather than credit card. The debtors provide no argument or support for why any mischaracterization of the nature of the debt would warrant loss of the presumption of validity, much less disallowance. Any such mischaracterization does not affect the debtors' liability or the amount of the claim. Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

Claim No. 16 was filed in accordance with Rule 3001(c)(4) and it constitutes prima facie evidence of the amount Citibank is owed. The proof of claim form does not ask for legal analysis differentiating the suggested categories but rather a broad description for the basis of the claim. The debtors cite to the statutory definition of "open end credit plan" under the Truth in Lending

Act, 15 U.S.C. § 1602(j), as well as the definition of "open-end credit" in 12 C.F.R. § 1026.2(a)(20), without discussion or reasoning as to their application. The debtors also again cite to cases decided prior to the 2012 amendment to Rule 3001 establishing the requirement for claims on open end or revolving consumer credit agreements.

While the debtors concede that Citibank's claim is one for open end consumer credit, they fail to explain why such debt may not be considered monies loaned for purposes of the proof of claim. Most importantly, any mischaracterization of the basis of the claim is at most harmless and does not negate the presumption of validity. *See generally Crutchfield,* 492 B.R. at 72 (quoting *In re Muller,* 479 B.R. 508, 513 (Bankr. W.D. Ark. 2012)) ("Prima facie validity is established by substantial compliance with 'the spirit of the applicable rules....'").

**5. The charge off of the debt.**

The debtors also argue that the claim is unenforceable because Citibank has charged off the debt as reported in its Statement. The debtors read the "charge off" information required under Rule 3001(c)(4) as evidence that their debt no longer collectible. Indeed, it would be the height of irony to require credit card creditors to provide a charge off date in their proofs of claim in bankruptcy to obtain the prima facie presumption of validity if that information were to preclude collection of that very claim. As the bankruptcy court in *McGarvey v. USAA Savings Bank (In re McGarvey)*, 613 B.R. 285, 307 n.14 (Bankr. E.D. Cal. 2020) explained:

> A creditor "charges-off" a debt when it appears difficult to collect or has aged past a certain date as required by applicable regulation. This can also afford the creditor some tax benefits, the "chargeoff" being a bad loss deduction against then current profits. The creditor may continue to try and collect (or sell it to someone else to try and collect) the debt. The "charge-off" does not change the legal enforceability of the debt.

Similarly, the bankruptcy court in *In re Rodriguez*, 555 B.R. 871 (Bankr. S.D. Fla. 2016) considered whether a creditor's charge off of the debt terminated the debtor's liability or

precluded collection of that debt in bankruptcy. Taking a closer look at the question, the court noted that some courts have differentiated between simply declaring a debt charged off for accounting purposes and those instances where a creditor has ostensibly "discharged" the debt by issuing an Internal Revenue Service Form 1099-C and may have received a tax benefit. *Id.* at 875. However, the court held that it need not decide whether a charged-off debt could ever preclude collection of the underlying claim when the creditor issued a 1099-C:

> This Court does not need to decide whether the issuance of a Form 1099-C would provide a basis to disallow a claim. In bankruptcy cases, a proof of claim is allowed unless a party in interest objects. [*In re Moreno*, 341 B.R. 813 (Bankr. S.D. Fla. 2006)]. In this case, upon objection, the Debtors had the burden "to produce sufficient evidence to negate the prima facie validity of the filed claim." *In re Allegheny International, Inc.,* 954 F.2d 167, 173 (3d Cir. 1992).
>
> The Debtors have not met their burden. Even if the Court followed the decisions disallowing claims where the debtor received a Form 1099-C reflecting the cancellation of the debt, the Debtors did not present evidence that they received a Form 1099-C for any of the debts subject of the charge-off objections. Therefore, the proofs of claim remain unrebutted and the claims will be allowed. *See In re Diaconx Corp*., 69 B.R. 333 (Bankr. E.D. Pa. 1987) (holding that the "unilateral action of a bank's accounting department in writing off a debt as uncollectible internally on its books" did not preclude enforcement of the obligation).
>
> In sum, the mere fact that a proof of claim includes reference to a charge-off date is not, standing alone, a legal basis for a claim objection.

*Id.* at 875-76.

It is generally accepted that "'[t]he majority of courts that have addressed this issue...have found that an IRS Form 1099–C alone is not sufficient evidence that the debt has been cancelled.'" *In re Lukaszka*, 2017 WL 3381815, at *3 (Bankr. N.D. Iowa Aug. 4, 2017) (quoting *In re Washington*, 2017 WL 1130144, at *5 (Bankr. D.S.C. Mar. 24, 2017)). These courts rely on the fact that "'a creditor may be obligated to file a Form 1099–C even though an actual discharge of indebtedness has not yet occurred or is not contemplated.'" *Id*. (quoting *F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013)). As evidence of this, the courts adopting the majority position

cite to "IRS information letters [to] show that the IRS does not consider the filing of a 1099–C to be an admission that a debt is discharged or a bar on future collection activity." *Id*. (citing *Cashion*, 720 F.3d at 179; I.R.S. Info. 2005–0207, 2005 WL 3561135 (Dec. 30, 2005)).

The court adopts the reasoning applied in *Rodriguez.* As in *Rodriguez,* Claim No. 16 is entitled to the presumption of validity and the debtors are required to rebut that presumption. They have not. Those courts adopting the minority position hold that a charged off debt may preclude further collection of that debt where the creditor issues a 1099-C. The debtors have failed to provide any evidence that Citibank issued a 1099-C form in this case. As in *Rodriguez*, the debtors have failed to rebut the presumption of validity even under the reasoning of those courts adopting the minority position as to charged-off debts.

**6. The remainder of the debtors' arguments.**

Finally, the debtors include a passing challenge to Citibank's standing to collect on its claims. They argue that Citibank has failed to affirmatively prove that it owns the debts. The debtors would require Citibank to produce the underlying documents giving rise to the credit card debts. The bankruptcy court in *Umstead* addressed the requirement of tracing assignments to the original creditor, Rule 3001(c)(4), and the presumption of validity:

> It is true that [the proof of claim], and the attached documentation, do not trace the entire path of the account from the original creditor to A as [In re O'Brien, 440 B.R. 654 (Bankr. E.D. Pa. 2010)] may have required under the prior version of Rule 3001. However, as discussed in Part III.B, supra, Rule 3001(c), in its current form, does not mandate the disclosure of the complete link from the initial creditor to the claimant. So long as the claimant identifies the original claimant and the entity that transferred the account to the claimant, the claimant has complied with the Rule. [The proof of claim] does so. In these circumstances, I see no reason to deny prima facie evidentiary status to [the proof of claim] or to disallow the claim in the absence of evidence rebutting the validity or amount of the claim. In my view, the proof of claim provided the Debtor with sufficient information regarding the assignment history of the account to impose the burden of invoking her rights under Rule 3001(c)(3)(B) and producing evidence negating the existing evidence that [the claimant] is the rightful owner of the account.

490 B.R. at 198-99. *See also Fiorella v. American Infosource, LP (In re Fiorella*, 2014 WL 6687317, at *2 (D. N.J. Nov. 26, 2014) ("As such, Rule 3001 now 'requires only disclosure of the identities of the original creditor and the entity that transferred the account to the claimant.' The rule does not require exhaustive disclosure of the intermediate transferors and transferees.") [internal citations omitted].

The debtors have provided no authority or evidence to rebut the presumption of validity of Claim No. 16. This extends to the prima facie showing of ownership of the debt obtained by operation of Rule 3001(c)(4) and (f). As required by Rule 3001(c)(4), Citibank has provided the required information, including the name of the original creditor, the current creditor, the alternative names for the creditor, and the creditor at the time of the last transaction. Citibank has provided this information and stated that at all times it has held the debt. Citibank is entitled the presumption of validity under Rule 3001(f). As the *Umstead* court held, this extends to the presumption that the stated current creditor owns the debt.

The debtors were not without recourse. They could have developed facts to rebut this presumption. They did not and their argument that Citibank was initially required to provide the complete history and evidence by which it obtained the debt is contrary to the provisions of Rule 3001(c).

In sum, the debtors' arguments fail to recognize and address the presumption of validity attaching to Citibank's claims. They have not presented evidence to rebut that presumption. Citibank's charge off of the credit card debts does not preclude its collection of those debts on the record before the court. Citibank has complied with those minimal requirements and Claim No. 16 is presumed valid under Rule 3001(f). This includes that Citibank is the creditor that owns the asserted debts. Thus, it fell to the debtors to present sufficient evidence to rebut

Citibank's claim. The debtors have not submitted any evidence to contradict Claim No. 16. Rather, they simply argue that Citibank has not done enough to state its claim in bankruptcy. These arguments are precluded by Rule 3001(c)(4). Citibank, having complied with those requirements, is entitled to the presumption under Rule 3001(f). Absent specific evidence controverting the validity or amount of Claim No. 16, the debtors cannot impose additional requirements on Citibank.

**Conclusion**

The debtors have failed to rebut the prima facie validity of Citibank's proof of claim no. 16. For the reasons stated herein, the court will enter a separate order overruling the Objection.

DATED: September 29, 2026

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve: Debtors
Citibank, N.A., 5800 South Corporate Place, Sioux Falls, SD 57108-5027
Citibank, N.A., c/o Quantum3 Group LLC, Attn: Moira Kirschbaum, Authorized Agent, P.O. Box 788, Kirkland, WA 98083-0788
J. Salmon, Esq.
N. Jipping, Trustee
U.S. Trustee
ECF Participants via NEF